J-A18033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN M. BELFIORE | : | |
| | : | |
| Appellant | : | No. 1167 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 1, 2023
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-SA-0000092-2022

BEFORE: OLSON, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: October 8, 2024**

Appellant, John M. Belfiore, appeals from the judgment of sentence imposed on September 1, 2023, for one count of careless driving. After careful review, we affirm.

Following a traffic accident in which the driver of a pickup truck was killed, Appellant was issued a traffic citation charging him with one count of the summary offense of careless driving resulting in unintentional death, 75 Pa.C.S. § 3714(b). The citation was filed with the Magisterial District Court on April 5, 2022, and, thereafter, Appellant was convicted as charged and sentenced to pay a $500.00 fine. Appellant filed a summary appeal to the Court of Common Pleas of Beaver County. Trial was rescheduled several times, but on September 1, 2023, following a *de novo* trial, Appellant was again convicted of this offense and ordered to pay a $500.00 fine and court costs. Appellant filed a timely notice of appeal to this Court on September 28,

2023.[1]  Both Appellant and the trial court have since complied with Pa.R.A.P. 1925.[2]

The trial court set forth the facts of this case as follows:

On September 25, 2022, at about 2:45 P.M., Pennsylvania State Trooper Nathanial Weitzell was dispatched to investigate an accident that had occurred at the intersection of Fairfield Boulevard and Shenango Road in the Borough of Big Beaver, Pennsylvania.  At the intersection, Fairlane Boulevard, which travels east-west, does not have any traffic control devices like stop signs or traffic lights, but Shenango Road, which ravels north-south, has stop signs on both sides of the intersection.  At the intersection, Fairlane Boulevard has two lanes:  a left-turn lane and a through or right-turn lane.  On the day in question there were no adverse weather conditions.  Upon arrival at the accident scene, Trooper Weitzell observed a tri-axle dump truck, which he later determined was driven by [Appellant], that was crashed into a Dodge pickup truck in the middle of the intersection.  When Trooper Weitzell arrived at the scene, the driver of the maroon pickup truck, later identified as [the victim], was still alive, but he died before the trooper had an opportunity to speak with him.  After concluding that there was nothing he could do for [the victim], Trooper Weitzell went over to speak to [Appellant], who was digging around in his tri-axle truck at that time.  Once the EMT on scene determined that [the victim] was not responding, Trooper Weitzell's [c]orporal contacted the Collision Analysis and Reconstruction ("CARS") Unit of the Pennsylvania State Police to conduct an accident reconstruction study.  After the full investigation was conducted and after receiving the CARS Unit

---

[1] The notice of appeal was filed in the trial court on September 28, 2023, and docketed in Superior Court on October 3, 2023.

[2] Initially, Appellant did not file his statement of errors complained of on appeal before the trial court's deadline and the trial court asked this Court to quash the appeal.  Trial Court Opinion, 10/31/23.  Appellant filed a motion to vacate and remand in this Court, stating that he had not received a copy of the trial court's order to file the statement of errors.  Application for Remand, 11/16/23.  This Court granted Appellant's request and remanded for the filing of a Rule 1925(b) statement.  Order, 12/8/23.  Appellant then complied, and the trial court authored a responsive opinion.

report on the accident, Trooper Weitzell issued a [t]raffic [c]itation on April 5, 2022[,] charging [Appellant] with violating 75 Pa.C.S.[] § 3714(b).  At the scene, Trooper Weitzell spoke with [Appellant], and at the *de novo* hearing Trooper Weitzell testified as follows:

THE COURT:  … You said you talked to [Appellant], right?

THE WITNESS:  Yes.

THE COURT:  What did he tell you?

THE WITNESS:  He told me that he was not supposed to be working that day.  His boss asked him to work.  He was carrying gravel in his truck all day.  It was his last load and … he just tried to cut the intersection to be done.

THE COURT:  So he tried to cut the intersection?

THE WITNESS:  Yes.

THE COURT:  Was [*sic*] there any statements that he made concerning observing the vehicles already in the intersection?

THE WITNESS:  Yes.  In the report it says he thought he had enough time.

THE COURT:  He thought he had enough time?

THE WITNESS:  Yes.

THE COURT:  So he told you he saw the [victim's] vehicle in the intersection?

THE WITNESS:  Coming towards the intersection, yes.

At the *de novo* summary hearing, [Appellant] testified that he has been a commercial truck driver for about 45 years and that he holds a Class A commercial driver's license.  [Appellant] is also certified by the Pennsylvania Board of Education to train Class A and Class B truck drivers, and he owns a school where he trains truck drivers.  [Appellant] further testified that he had been regularly driving the particular[,] red Volvo tri-axle dump truck that he was driving the day of the accident for about six or seven years at the time of the collision.  This testimony indicated that [Appellant] should have known the limits of his truck in regard to turning and braking given his experience as a professional truck driver and as a trainer of new commercial truck drivers.

- 3 -

The best evidence of this accident is the video taken by the camera mounted on the inner ceiling of [Appellant's] dump truck. The camera was positioned about three feet to the right of the driver's seat on the roof of the vehicle, so the video approximates what [Appellant's] view would have been at the time of the collision and the time leading up to the collision. This video was played for the [c]ourt during the *de novo* summary trial. The video shows the view from [Appellant's] truck as he drove west on Fairlane Boulevard toward the intersection with Shenango Road. The video was tak[en] in broad daylight with no adverse weather conditions. In the video, the intersection is clearly visible and the victim's truck becomes visible as it approaches the intersection driving east of Fairlane Boulevard at timestamp 14:49:23 in the video. The victim's vehicle becomes clearly visible in the video when [Appellant's] truck is approximately 100 feet away from the intersection. The video shows that [Appellant's] vehicle entered the eastbound through lane of Fairlane Boulevard directly into the path of the victim's vehicle. The victim's vehicle had been clearly in [Appellant's] line of sight for enough time that he could have [stopped] and should not have attempted to make the left turn which required him to travel directly in front of the victim's vehicle, which caused the collision. Further, [Appellant] told the responding trooper that he did see the victim's vehicle, but he attempted to make the left-turn anyway because he thought he had enough time. [Appellant's] statement to the trooper and the video evidence just described established that [Appellant's] driving was in careless disregard for the safety of others and his actions caused the death of [the victim.]

Trial Court Opinion, 1/2/24, at 3-6 (citations and footnotes omitted).

In his brief to this Court, Appellant raises the following claims:

1. Did the [t]rial [c]ourt err[] in finding [Appellant] guilty of violating 75 Pa.C.S. § 3714(b) when the evidence presented at trial, even viewed in a light favorable to the Commonwealth, is insufficient to prove a required element of the offense, [Appellant's] *mens re[a]*, beyond a reasonable doubt?

2. Did the [t]rial [c]ourt err[] in finding [Appellant] guilty of violating 75 Pa.C.S. § 3714(b)[,] Careless Driving Involving an Unintentional Death[,] when the evidence presented at trial was insufficient to prove the actions of … [A]ppellant were not more than mere negligence[?]

- 4 -

Brief for Appellant at 5.

As both of Appellant's issues ask us to consider the sufficiency of the evidence to support his conviction for careless driving, we address them together. The Pennsylvania Supreme Court recently explained our standard of review as follows:

> In conducting sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. Our review does not involve reweighing the evidence and substituting our judgment for that of the fact-finder. In addition, the facts and circumstances need not be absolutely incompatible with the defendant's innocence; rather, the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Chisebwe***, 310 A.3d 262, 268 (Pa. 2024) (internal citations and quotation marks omitted).

Appellant was convicted of the offense of careless driving - unintentional death, which is set forth in our Vehicle Code, in relevant part, as follows:

### § 3714. Careless driving

**(a) General rule.**--Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

**(b) Unintentional death.**--If the person who violates this section unintentionally causes the death of another person as a result of the violation, the person shall, upon conviction, be sentenced to pay a fine of $500.

75 Pa.C.S. § 3714(a), (b). "'The *mens rea* requirement applicable to Section 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances.'" **Commonwealth v. Saunders**, 259 A.3d 524, 529 (Pa. Super. 2021) (quoting **Commonwealth v. Gezovich**, 7 A.3d 300, 301 (Pa. Super. 2010)).

Appellant argues that this was just an unfortunate accident and that the Commonwealth failed to prove that his actions constituted more than mere negligence. As noted above, the *mens rea* requirement for this section is "careless disregard," which is an intentional state that is less than willful or wanton conduct, but more than ordinary negligence. **Gezovich**, 7 A.3d at 301. The mere fact that an accident occurred does not prove negligence. **Id.** at 302. More than mere negligence and more than a mere absence of care is necessary for conviction. **Id.**

Appellant argues that sufficient evidence is lacking because, contrary to the testimony of Trooper Weitzell at the summary trial, Appellant did not make any incriminating statements about seeing the pickup truck in the intersection prior to the crash. Appellant further disputes that the video evidence approximates his own field of view before the accident. Regarding this issue, Trooper Weitzell testified about his discussion with Appellant at the scene, stating:

> [Appellant] told me that he was not supposed to be working that day. His boss asked him to work. He was carrying gravel in his truck all day. It was his last load and … he just tried to cut the

intersection to be done. … [Appellant] thought he had enough time.

N.T., 10/18/23, at 35. When asked if Appellant said that he saw the victim's pickup in the intersection, the trooper testified, "Coming towards the intersection, yes." *Id.* As the fact finder in this case, the trial court was free to credit the trooper's testimony that Appellant stated that he saw the victim's pickup truck before the collision. *Commonwealth v. Miller*, 724 A.2d 895, 901 (Pa. 1999) (stating, "As the fact finder, the trial court is free to believe all, some, or none of the evidence presented.").

Appellant also argues that the video, taken from his own camera mounted in the cab of his tri-axle truck, does not show Appellant's actual field of vision during the accident. He maintains that "[t]here is reasonable doubt that what he perceived and what his brain processed was the same as the unblinking camera." Brief for Appellant at 20-21. Appellant stresses that he was focused on a third car, a black sedan, which was in front of the victim's vehicle on the right, looking like it would make a right turn, but stopped on the shoulder of the roadway for an extended time. N.T. at 21-24. Basically, his argument is that it is unreasonable to believe that Appellant, after perceiving the threat posed by the pickup truck and understanding the situation, decided that he had time to turn his vehicle through the intersection anyway. Brief for Appellant at 21. Appellant further argues that he had slowed his speed to approximately 6 miles per hour, as noted by the electronic data recorder from the tri-axle truck and as included in the trooper's report.

*Id.* at 31. His argument, in essence, is that nothing more than negligence was proven beyond a reasonable doubt. We do not agree.

Upon our review of the record, which includes viewing the video recording and examining the trial transcripts, we agree with the trial court's assessment that Appellant made a left turn in front of oncoming traffic without first determining that it was safe to do so. The oncoming pickup truck driven by the victim was seen clearly in the video, well before Appellant made his turn. Based upon where the dump truck came to rest, it appears that, like Appellant stated to the trooper at the time, he tried to cut the intersection and quickly make the left turn in front of the oncoming traffic. Further, as noted by the trial court, Appellant was an experienced truck driver, well familiar with the limits of the tri-axle truck, and should have known that he did not have enough time to make the left turn that resulted in the victim's death. This also supports the conclusion that Appellant acted in careless disregard for the safety of the others on the roadway.

On appeal, Appellant essentially requests that we override the credibility decisions of the trial court, reassess the evidence to credit his position, and re-weigh the evidence to arrive at a different conclusion. This we cannot do. As noted above, the trial court, as the finder of fact in this case, had the duty to evaluate the credibility of the testimony and evidence presented at trial. *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015). The trial court's factual findings have clear support in the record. Appellant's actions on the day of the victim's death constituted a careless disregard for the safety

of those other individuals on the roadway. ***Cf. Sanders***, ***supra*** (finding sufficient evidence for careless driving where a bus driver, who had an unobstructed view of the crosswalk for at least 45 seconds before starting to make a left turn, failed to notice a victim walking in the crosswalk and struck and killed the victim; the court found that the driver acted in careless disregard for the victim's safety).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/8/2024